**AFFIRMED and Opinion Filed August 6, 2024**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-23-00350-CV**
_____

**IN THE INTEREST OF O.I.C., A CHILD**

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-51277-2021**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Nowell

This appeal arises from a petition to modify the parent-child relationship regarding the possession schedule of O.I.C., a child. Father argues the trial court abused its discretion by determining there was no material and substantial change in circumstances requiring modification of a 2022 possession order, and he challenges the sufficiency of the evidence supporting several findings of fact. We affirm.

# Background[1]

Mother and Father married on January 5, 2008 in Fort Worth, Texas. They subsequently moved to Nebraska and had one child, O.I.C. During that time, Father was completing his PhD program to become a sports neuropsychologist specializing in concussions. After the marriage became irreconcilable, Mother and O.I.C. moved to Collin County, Texas.

On May 31, 2017, a Decree of Dissolution of Marriage (the Nebraska Order) was signed by a trial court in Lancaster County, Nebraska. It included a court-ordered parenting plan for O.I.C. The order provided, "Physical custody and principal place of residence of the child shall be with the Mother, who has been allowed to relocate with the minor child to the State of Texas by prior Court Order." It also included a detailed parenting schedule for visitation and transportation for O.I.C. between Texas and Nebraska. Both parties agreed to the parenting plan.

In 2019, Father moved to Plano, Texas to work at Children's Health James Andrews Institute as part of his fellowship. Father hoped to stay in Texas after his fellowship and continue working at the Andrews Institute.

On March 11, 2021, Father filed an original SAPCR petition in Collin County seeking modification of the Nebraska Order because the circumstances of those involved had materially and substantially changed since rendition of that order.

---

[1] This background includes facts taken from the findings of fact and conclusions of law, as well as witness testimony from the August 19, 2022 hearing.

Father explained the COVID-19 pandemic created difficulties for him to consistently spend time with O.I.C. even though Father, Mother, and O.I.C. lived in Collin County. Further, the Nebraska Order did not contain a visitation and possession provision for when parents resided within one hundred miles of each other.

On May 13, 2021, the parties signed a mediated settlement agreement (MSA) giving Mother the exclusive right to designate O.I.C.'s primary residence within Collin County and contiguous counties. The MSA stated in relevant part, "Father shall have the right to possession of the child pursuant to the Expanded Standard Possession Schedule in the [Texas Family Code], with Thursday and Sunday overnight possession. Standard 100-mile schedule." It also provided, "All other provisions of the Nebraska Order shall remain in full force and effect."

In July 2021, Father learned he did not receive a post-fellowship job offer at the Andrews Institute. He was discouraged from starting his own practice in the Dallas area because of the prominence of the Andrews Institute. He decided to move back to Nebraska to open his own clinic.

On January 31, 2022, the trial court signed an Agreed Order in Suit to Modify the Parent-Child Relationship memorializing the MSA (the 2022 Agreed Order). The order included a possession schedule for "Parents Who Reside 100 Miles or Less Apart." It specified that to the extent there existed any differences between the MSA and the 2022 Agreed Order, the 2022 Agreed Order controlled in all instances.

It further stated, "All other terms of the prior orders not specifically modified in this order shall remain in full force and effect."

On February 14, 2022, two weeks after the trial court signed the 2022 Agreed Order, Father filed a SAPCR petition to modify the parent-child relationship requesting the trial court grant "a Standard Possession Schedule with over 100 mile provisions outlined in the Texas Family Code as Father is now residing in Nebraska."

The trial court held a hearing on August 19, 2022. Father stated he wanted to add a provision to the 2022 Agreed Order for possession of O.I.C. when a parent lives greater than one hundred miles away from the primary residence of O.I.C. because "the only provision that's in the current order covers miles less than a hundred miles." Mother maintained Father's move back to Nebraska was not a material and substantial change in circumstances, and the Nebraska Order, which was still in full force and effect, provided for visitation and possession when the parties lived more than one hundred miles apart.

On March 28, 2023, the trial court signed findings of fact and conclusions of law in which it determined, in relevant part, that

- There is no material and substantial change in circumstances since the entry of the applicable order/MSA;

- The petition to modify filed by [Father] (First Amended Petition to Modify Parent Child Relationship) should be denied; and

- All terms of the prior orders not specifically modified in [the] 2023 Order shall remain in full force and effect.

The trial court signed the "Final Order on Petition to Modify Parent-Child Relationship" on January 19, 2023. This appeal followed.

**Standard of Review**

An appellate court reviews a trial court's order regarding child custody, control, possession, and visitation for an abuse of discretion. *In re L.C.L.*, 396 S.W.3d 712, 716 (Tex. App.—Dallas 2013, no pet.). A trial court abuses its discretion when it acts arbitrarily and unreasonably without reference to any guiding rules or principles. *Id.* In family law cases, the abuse of discretion standard of review overlaps with traditional standards of review. *Id.* As a result, legal and factual insufficiency are not independent grounds of reversible error, but instead are factors relevant to an appellate court's assessment of whether the trial court abused its discretion. *Id.* To determine whether the trial court abused its discretion, an appellate court considers whether the trial court had sufficient evidence on which to exercise its discretion and erred in its exercise of that discretion. *Id.* As long as some evidence of a substantive and probative character exists to support the trial court's judgment, an appellate court will not substitute its judgment for that of the trial court. *Id.*

In a legal sufficiency review, we consider the evidence in the light most favorable to the court's order and indulge every reasonable inference that supports

it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *In re S.N.Z.*, 421 S.W.3d 899, 908–09 (Tex. App.—Dallas 2014, pet. denied). A trial judge does not abuse his discretion if some evidence of a substantial and probative character exists to support the decision. *In re S.N.Z.*, 421 S.W.3d at 908. In a factual sufficiency review, we consider all the evidence supporting and contradicting the factfinder's finding. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *In re S.N.Z.*, 421 S.W.3d at 908. The evidence is factually insufficient if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *In re S.N.Z.*, 421 S.W.3d at 909. The trial court is in the best position to observe the witnesses and their demeanor and, therefore, is given great latitude when determining the best interests of the child. *Id.*

In a bench trial, where the trial court makes findings of fact, as it did in this case, those findings are the equivalent of jury answers to special issues. *In re H.N.T.*, 367 S.W.3d 901, 903 (Tex. App.—Dallas 2012, no pet.). Those findings define and limit the issues on which the judgment may be reviewed. *Id.*

### Modification of Visitation Schedule

In his first issue, Father argues the trial court abused its discretion by concluding there was no material and substantial change in circumstances warranting modification of the 2022 Agreed Order after Father moved back to Nebraska. Mother responds the trial court did not abuse its discretion because Father's move was not a material and substantial change in circumstances from entry

of the 2022 Agreed Order. Further, no subsequent order from a Texas court has modified their parenting schedule in the Nebraska Order.

Section 156.101 of the family code provides that a court may modify an order that provides for the possession of or access to a child if modification is in the child's best interest and the circumstances of the child, conservator, or other party affected by the existing conservatorship order have materially and substantially changed since the rendition of the existing order. TEX. FAM. CODE ANN. § 156.101(a). To demonstrate that a material and substantial change of circumstances has occurred, the evidence must show what conditions existed at the time of the entry of the prior order as compared to the circumstances existing at the time of the hearing on the motion to modify. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, pet. denied). In other words, "the record must contain both historical and current evidence of the relevant circumstances," otherwise "the court has nothing to compare and cannot determine whether a change has occurred." *Zeifman v. Michels*, 212 S.W.3d 582, 594 n. 2 (Tex. App.—Austin 2006, pet. denied).

In an effort to ensure stability and continuity for children, Texas law imposes significant hurdles before a conservatorship order may be modified. *In re H.N.T.*, 367 S.W.3d at 904. In deciding whether circumstances have materially and substantially changed, the trial judge is not confined to rigid or definite guidelines. *In re S.N.Z.*, 421 S.W.3d at 910. Rather, the determination depends on the facts of the case and must be made according to the circumstances as they arise. *Id.*

Because Father was seeking modification, he bore the burden to establish modification was in O.I.C.'s best interest and circumstances had materially and substantially changed since rendition of the 2022 Agreed Order. *Id.* at 909. Father argues the 2022 Agreed Order modified the parenting plan in the Nebraska Order, and the 2022 Agreed Order was silent regarding his right to possession of and access to O.I.C. if he lived more than one hundred miles away; therefore, his move to Nebraska was a material and substantial change. We disagree.

"A modification alters only those terms of the original agreement to which it refers, leaving intact those unmentioned portions of the original agreement that are not inconsistent with the modification." *Barger v. Barger*, No. 01-15-00659-CV, 2016 WL 7473944, at *5 (Tex. App.—Houston [1st Dist.] Dec. 29, 2016, no pet.). The Nebraska Order detailed a parenting schedule that included provisions for: (1) regular monthly parenting time; (2) holiday parenting time; (3) summer parenting time; and (4) reasonable efforts to accommodate special events. The 2022 Agreed Order added possession and access language for when the parties lived within one hundred miles of each other, which was the modification Father requested and the parties agreed to in the MSA.[2] While the 2022 Agreed Order did not include language regarding possession of and access to O.I.C. when a parent lived more than

---

[2] Father testified when the parties went to mediation in May 2021, he did not have a pleading on file requesting a provision for a parent who resided over one hundred miles from the child. However, after mediation and before the trial court signed the 2022 Agreed Order, he sought to include the Texas expanded schedule in the MSA. The issue was arbitrated, and the arbitrator determined it was not part of the MSA and should not be included in the 2022 Agreed Final Order.

one hundred miles away, it stated that "All other terms of the prior orders not specifically modified in this order shall remain in full force and effect."  As such, the 2022 Agreed Order did not modify the Nebraska Order's parenting schedule but instead recognized that the Nebraska Order's parenting schedule remained intact and in full force and effect.[3]  *Barger*, 2016 WL 7473944, at \*5; *see also In re H.M.*, No. 05-12-01638-CV, 2014 WL 2801356, at \*2 (Tex. App.—Dallas June 17, 2014, no pet.) (mem. op.) (concluding standard possession order in divorce decree remained in full force and effect because modification order stated "[a]ll other terms of the prior orders not specifically modified in this order shall remain in full force and effect"); *Interest of C.G.P.*, No. 08-22-00070-CV, 2023 WL 2733362, at \*7 (Tex. App.—El Paso Mar. 30, 2023, pet. denied) (mem. op.) (concluding when trial court did not grant father's request to be appointed conservator with the right to designate the children's primary residence, the prior order appointing mother as the conservator with the exclusive right to designate the children's primary residence remained in place because order stated "[a]ll other terms of the prior orders not specifically modified in this order shall remain in full force and effect").

In reaching this conclusion, we reject Father's reliance on *Harris v. Harris*, No. 03-02-00404-CV, 2003 WL 742362, at \*3 (Tex. App.—Austin Mar. 6, 2003, no

---

[3] In reaching this conclusion, we overrule Father's sufficiency challenges to Findings of Fact 20 and 28 in which he argues the MSA and the 2022 Agreed Order modified the parenting plan in the Nebraska Order.

pet.) (mem. op.). In that case, the court of appeals considered, in part, whether a Texas order modified prior Mississippi custody orders. *Id.* It concluded "[t]he Texas order supersedes and controls over all prior foreign child-custody determinations." *Id.* Relying on that isolated statement, Father maintains the 2022 Agreed Order modified the Nebraska Order. The present facts are distinguishable from *Harris* because the order in *Harris* did not contain language indicating "[a] ll other terms of the prior orders not specifically modified in this order shall remain in full force and effect." This language is significant because it indicates the 2022 Agreed Order did not supersede and control over all prior foreign child-custody determinations. *Id.*; *see Barger*, 2016 WL 7473944, at *5. Unlike in *Harris*, Mother and Father had an order providing for possession of and access to O.I.C. when they lived within one hundred miles of each other (the 2022 Agreed Order) and an order providing for possession of and access to O.I.C. when they lived more than one hundred miles apart (the Nebraska Order).

A parent moving is not in and of itself a material and substantial change in circumstance. *See Considine v. Considine*, 726 S.W.2d 253, 255 (Tex. 1987) (concluding that change of residence is a contemplated change within meaning of family code, and parent's move to Canada was not shown to be substantial and material as to be injurious to welfare of children). Here, the record contains both the historical and current evidence of the relevant circumstances as they existed at the time of the 2022 Agreed Order and at the time of the modification hearing. *In re*

*A.B.P.*, 291 S.W.3d at 95. When the trial court signed the 2022 Agreed Order and Father subsequently filed a SAPCR petition to modify the 2022 Agreed Order based on his move back to Nebraska, nothing had substantially and materially changed. All parties were living in the same locations as they were when the Nebraska Order, which remained in full force and effect, was signed. Father resided in Nebraska and Mother and O.I.C. resided in Texas at the time of the hearing and when the trial court signed the January 31, 2023 order at issue on appeal. *See, e.g.*, *In re H.N.T.*, 367 S.W.3d at 904 (concluding no material or substantial change in circumstances had occurred from the conditions that existed at the time of the entry of the divorce decree and the conditions that existed at the time of the hearing on the petition to modify because mother lived in Houston at both times).

The trial court had evidence of a substantive and probative character supporting its judgment. *In re L.C.L.*, 396 S.W.3d at 716. After reviewing the record, we conclude the trial court did not abuse its discretion by finding "there was no material and substantial change in circumstances since the entry of the applicable order/MSA." We overrule Father's first issue. To the extent Mother raises alternative arguments supporting the judgment, we need not address them. TEX. R. APP. P. 47.1.

Father challenges three other findings of fact in his second issue; however, they are immaterial to our affirmance of the overall judgment. We may only reverse the trial court's judgment if the court made an erroneous finding on an ultimate issue

–11–

of fact.  *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 822, 831 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).  Thus, we do not address Father's second issue to the extent he challenges immaterial findings of fact.  TEX. R. APP. P. 47.1.

### Conclusion

The judgment of the trial court is affirmed.


/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

230350F.P05



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF O.I.C., A
CHILD

No. 05-23-00350-CV

On Appeal from the 417th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 417-51277-
2021.
Opinion delivered by Justice Nowell.
Justices Molberg and Kennedy
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Sonia Hack recover her costs of this appeal from appellant Todd Joseph Caze, Jr.

Judgment entered August 6, 2024